FILED
2024 Mar-04 PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BARBARA SPENCER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **2:23-cv-01732-LSC** |
| ) | |
| **HOMESITE INSURANCE** ) | |
| **COMPANY OF THE** ) | |
| **MIDWEST,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OF OPINION

Plaintiff Barbara Spencer filed this action against Defendant Homesite Insurance Company of the Midwest in the Circuit Court of Jefferson County, Alabama. (Doc. 1-1 at 2.) Spencer claims Homesite breached an insurance contract by failing to pay the full amount of her insurance claim. Homesite removed the action to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1.) Spencer then timely filed a motion to remand, contending that removal is improper because Homesite cannot show the amount in controversy exceeds $75,000. (Doc. 9.) The motion is fully briefed and ripe for review. Upon due consideration and for the reasons stated herein, Spencer's motion to remand is due to be **DENIED**.

I. **BACKGROUND**

Spencer purchased a home insurance policy from Homesite that was in effect at all times relevant to this action. (Doc. 1-1 ¶¶ 4, 6.) One day, a dead tree fell on her home, allegedly causing severe damage and exposing the inside of her home to pouring rain. (*Id.* ¶ 5.) She promptly reported the damage to Homesite. (*Id.* ¶ 6.)

Homesite's adjuster directed Spencer to hire a contractor and to solicit estimates for necessary repairs. (*Id.* ¶ 7.) Spencer received two estimates: a $2,061.00 estimate for initial work needed to protect her home from further damage, and a detailed estimate of $57,145.00 for the repairs necessary to return her home to its pre-loss condition. Homesite allegedly "refused to pay" the estimated amount for the initial work and "refused to consider" the estimated total-repair cost. (*Id.* ¶¶ 8–9.)

Spencer claims that Homesite created and imposed "[f]ictional contractual requirements" upon her. (*Id.* ¶ 11.) For example, Homesite allegedly demanded that Spencer prove the damage to her home was not caused by wind. (*Id.*) Although Spencer allegedly "submitted proof that there were no damaging winds near her home when the dead tree fell on her home," Homesite still charged a $2,500.00 deductible for wind damage. (*Id.* ¶¶ 11, 18.)

Page **2** of **12**

Following what Spencer describes as an "arbitrary" $6,667.58 payment made by Homesite, Spencer filed a complaint with the Alabama Department of Insurance. (*Id.* ¶ 12.) Homesite has since made additional payments totaling $21,599.51 paid to date, which reflects its adjuster's "total line-item cost estimate" of $25,791.00, minus depreciation. (*Id.* ¶¶ 13–14, 23.) Spencer argues that the Homesite adjuster's estimate was based on an inadequate "field inspection," which could not and did not consider unseen structural damage. (*Id.* ¶ 14.)

Spencer's home allegedly remains unrepaired. (*Id.* ¶ 15.) The tarp-covered roof continues to leak water, causing further damage to her home. (*Id.*) Its "cold, wet, unhealthy[,] uncomfortable, and unsafe" condition allegedly causes Spencer to continue to "suffer severe, ongoing damage," including lost use and enjoyment of her home. (*Id.*) Spencer seeks unspecified compensatory and punitive damages for Homesite's alleged bad faith and breach of contract. (*Id.* ¶¶ 27, 33.)

## II.  Standard of Review

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute...." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction...." *Id.* (citations omitted).

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441). "[R]emoval statutes are construed narrowly," and any "uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (citation omitted). The removing party bears the burden of establishing the propriety of removal. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (citation omitted).

### III. Analysis

To exercise subject matter jurisdiction under § 1332(a), this Court must assure itself that the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000). The record indicates that the parties are diverse: Spencer is a citizen of Alabama, and Homesite is a citizen of Wisconsin. (Doc. 1 ¶¶ 5, 6.) Therefore, this Court must determine only whether the amount in controversy exceeds $75,000. As the removing party, Homesite bears the burden of proof. *Wilson*, 257 U.S. at 97.

Removal is proper "if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement," even if "the complaint does not claim a specific amount of damages." *Pretka v. Kolter City Plaza*

*II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Id.* at 752 (quoting *Williams*, 269 F.3d at 1319).

When assessing the amount in controversy, courts may consider evidence submitted by the parties together with allegations in the complaint and in the notice of removal. *Id.* In doing so, "courts may use their judicial experience and common sense," and they may "make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th. Cir. 2010) (internal quotations and citations omitted). Courts may not, however, resort to "conjecture, speculation, or star gazing." *Pretka*, 608 F.3d at 754. When a plaintiff asserts multiple claims, "all of the plaintiff's claims may be aggregated to reach the jurisdictional minimum." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 585 (2005).

Here, Spencer asserts two counts: one for breach of contract and one for bad faith. (Doc. 1-1 ¶¶ 27, 33.) She seeks an unspecified amount of compensatory and punitive damages. Thus, this Court must rely upon its judicial experience and

common sense to deduce whether the total amount in controversy more likely than not exceeds $75,000. *Pretka*, 608 F.3d at 752.

### A. Spencer seeks at least $37,606.49 in compensatory damages.

The basis of this action is Spencer's insurance claim for repairs necessary to fix her home after a tree fell on it. Based on a repair estimate she received from a contractor, Spencer claimed $57,145.00 from Homesite. Homesite disputed the amount owed but made $21,599.51 in pre-suit payments on Spencer's claim. These pre-suit payments cannot be considered "in controversy." *See Koester v. State Farm Ins. Co.*, No. 7:12-CV-02528-JEO, 2012 WL 5265783, at *5 (N.D. Ala. Oct. 22, 2012) ("As would seem self-evident, when an insurer makes pre-suit payments towards an insured's claim, such amounts are not 'in controversy' and thus are not included when determining whether the jurisdictional threshold has been met." (citations omitted)). The difference of Spencer's $57,145.00 claim and Homesite's $21,599.51 payments is $35,545.49. Thus, this Court concludes that Spencer seeks compensatory damages of $35,545.49 for her unpaid insurance claim.

Spencer claims additional unspecified compensatory damages beyond the unpaid amount of her initial insurance claim. They include (1) "further structural damage" allegedly caused by Homesite's failure to timely pay for necessary repairs; (2) "loss of personal property due to water damage," including damage to

furniture and carpet; (3) "financial hardship and economic loss"; and (4) "depreciation of the value of [her] home due to unrepaired damage." (Doc. 1-1 ¶¶ 15, 26, 32.) This Court concludes that the $2,061.00 estimate Spencer received for initial repairs needed to protect her home from further damage represents a reasonable estimate of the amount in controversy for Spencer's claims of ongoing damages. Adding this amount to the unpaid amount of her insurance claim, this Court interprets Spencer's complaint as requesting at least $37,606.49 in compensatory damages.

### B. The amount of punitive damages reasonably in controversy exceeds $37,606.49.

In addition to compensatory damages, Spencer seeks punitive damages both on her breach of contract claim and on her bad faith claim.[1] (*Id.* ¶¶ 27, 33.) This Court having concluded that at least $37,606.49 is in controversy for compensatory damages, Homesite must establish by a preponderance of the evidence that at least another $37,393.52 is in controversy for punitive damages. *Pretka*, 608 F.3d at 752.

---

[1] Spencer's breach of contract claim alleges that Homesite "falsely and fraudulently represented" that her "property damage would be covered under the terms of the contract"; that Homesite knew it "had no legitimate or reasonable basis for failing to pay the full amount" of her claims; and that it nevertheless intentionally or recklessly failed to properly investigate and pay her claims. (Doc. 1-1 ¶¶ 22–25.) Her bad faith claim incorporates the same allegations and adds that Homesite intentionally or recklessly charged an inapplicable deductible for wind damage, and that it had "actual knowledge of the absence of any reasonably legitimate or arguable basis not to pay for" necessary repairs. (*Id.* ¶ 29.)

This Court concludes that the amount of punitive damages reasonably in controversy exceeds $37,606.49, and therefore Homesite has met its burden.

When calculating the amount in controversy, punitive damages must be considered "unless it appears to a legal certainty that such an amount cannot be recovered." *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). The relevant consideration is not the plaintiff's likelihood of winning on the merits of her claims, but rather the amount of punitive damages that the plaintiff reasonably could recover if her claims are successful. *Pretka*, 608 F.3d at 751. The amount of punitive damages reasonably available to a plaintiff generally increases with the severity of the defendant's alleged misconduct. *See Roe*, 613 F.3d at 1065.

To attempt to establish the requisite amount in controversy here, Homesite cites decisions in which the court determined the amount in controversy exceeded $75,000 where the plaintiff, like Spencer, sought compensatory and punitive damages for an insurer's alleged bad faith breach of contract. Spencer argues that Homesite's cited decisions are distinguishable, and she cites a decision in which a plaintiff's bad faith breach of contract claim did not satisfy the amount in controversy requirement. Upon careful review and due consideration, this Court is unpersuaded by Spencer's arguments.

Spencer relies on *Koester* to argue that Homesite has failed to meet its burden to establish the requisite amount in controversy. *See Koester*, 2012 WL 5265783, at *7 (remanding for insufficient amount in controversy). The plaintiff in *Koester* asserted a bad faith claim against his insurer for failing to properly investigate his $12,834.80 claim and for denying the claim without reason. *Id.* at *1. The insurer argued that the availability of emotional and punitive damages satisfied the jurisdictional amount in controversy requirement. *Id.* at *2. The court acknowledged that it was "legally *possible*" for the plaintiff to recover more than the jurisdictional amount. *Id.* at *6 (emphasis in original) (collecting cases). However, emphasizing that the disputed compensatory damages "appear[ed] to be less than $13,000," the court determined that a substantial punitive award was not likely at issue. *Id.* at *6, *7. Thus, the insurer failed to carry its burden to show jurisdiction. *Id.* at *7. By contrast, the disputed compensatory damages here—$37,606.49—are nearly triple the amount found to be insufficient in *Koester*.

Homesite's cited decisions support the conclusion that punitive damages reasonably in controversy here, unlike in *Koester*, exceed $75,000. *See, e.g.*, *Shepherd v. State Farm Fire & Cas. Co.*, No. 7:12-CV-0580-LSC, 2012 WL 3139752, at *3 (N.D. Ala. July 30, 2012). The plaintiff in *Shepherd* sought $38,549.19 in unpaid insurance benefits, plus emotional and punitive damages, on bad faith and

breach of contract claims. *Id.* at *1 n.2. He alleged that the insurer failed to acknowledge his submitted itemized list of damaged property and refused to pay the full value of his claim. *Id.* at *1. Based on these allegations and its "judicial experience and common sense," the court determined that, if the bad faith claim was successful, a punitive award representing one to two times compensatory damages would be appropriate. *Id.* at *3. Like the plaintiff in *Shephard*, here Spencer claims that Homesite refused to consider evidence of the value of her claims, i.e., her submitted estimates for necessary repairs and evidence that the damage was not caused by wind, and that Homesite refused to pay the full value of her claim. Given the similarity of these allegations, this Court finds no reason not to apply the same logic in evaluating Spencer's bad faith claim.

Accordingly, based on its "judicial experience and common sense," this Court concludes that, if Spencer's bad faith claim proves meritorious, a punitive award of greater than $37,606.49 is reasonably at issue.[2] *Cf. id.*; *see also Stubbs v. State Farm Fire & Cas. Co.*, No. 2:12-CV-2186-SLB, 2013 WL 980313, at *5 (N.D.

---

[2]   To clarify, this Court does not consider the likely success of Spencer's punitive damages claims. Indeed, this Court recognizes that bad faith claims against insurers rarely make it to a jury. *See Arnold v. Guideone Specialty Mut. Ins. Co.*, 142 F. Supp. 2d 1319, 1321 (N.D. Ala. 2001) ("As a matter of historical and jurisprudential fact, a plaintiff in Alabama has a very small chance of getting a claim of bad faith past an insurance company's summary judgment motion. Any legitimately debatable reason for a denial of an insurance claim forecloses the tort of bad faith."). But the relevant determination is the amount Spencer might reasonably expect to recover if her claim is successful, not the probability that her claim will be successful. *Pretka*, 608 F.3d at 751.

Ala. Mar. 8, 2013) (concluding that punitive damages alone could exceed $75,000 where the defendant-insurer delayed making payments and allegedly refused to pay the full claim amount without a legitimate basis); *Henry v. Nationwide Ins. Co.*, No. CIV.A. 06-0612-CG-M, 2007 WL 2409817, at *1 (S.D. Ala. Aug. 22, 2007) (rejecting the plaintiff's attempt to challenge the amount in controversy where the plaintiff sought punitive damages in addition to $35,000–$40,000 in claimed insurance benefits); *Davis v. Franklin Life Ins. Co.*, 71 F. Supp. 2d 1197, 1199 (M.D. Ala. 1999) (concluding that the defendant established the requisite amount in controversy based on evidence that the average punitive damages awarded by Alabama juries and affirmed by the Alabama Supreme Court against out-of-state insurance companies was $874,667). Thus, the jurisdictional amount in controversy requirement is satisfied. *Morrison*, 228 F.3d 1261.

### IV. CONCLUSION

For the reasons stated above, this Court concludes that Homesite has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. Accordingly, Spencer's motion to remand is due to be **DENIED**. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** AND **ORDERED** ON MARCH 4, 2024.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
215647